# United States Court of Appeals for the Federal Circuit

04-1392

SENTRY PROTECTION PRODUCTS, INC.
and HERO PRODUCTS, INC.,

Plaintiffs-Appellants,

v.

EAGLE MANUFACTURING COMPANY,

Defendant-Appellee.

Lesley A. Weigand, Wegman, Hessler & Vanderburg, of Cleveland, Ohio, argued for plaintiffs-appellants. With her on the brief were Bruce E. Peacock and Karl R. Wetzel.

R. Eric Gaum, Hahn Loeser & Parks LLP, of Akron, Ohio, argued for defendant-appellee. Of counsel was Edward F. Welsh, Armstrong, Kratz, Quintos, Hanson & Brooks, LLP, of Pittsburgh, Pennsylvania.

Appealed from: United States District Court for the Northern District of Ohio

Judge Solomon Oliver, Jr.

# United States Court of Appeals for the Federal Circuit

04-1392

SENTRY PROTECTION PRODUCTS, INC.
and HERO PRODUCTS, INC.,

Plaintiffs-Appellants,

v.

EAGLE MANUFACTURING COMPANY,

Defendant-Appellee.

_____

DECIDED: March 11, 2005

_____

Before LOURIE, SCHALL, and PROST, Circuit Judges.

PROST, Circuit Judge.

Sentry Protection Products, Inc. and Hero Products, Inc. (collectively, "Sentry") appeal from a decision of the United States District Court for the Northern District of Ohio, Case No. 1:01-CV-2240 (Apr. 1, 2004), granting summary judgment of noninfringement and invalidity of U.S. Patent No. 6,244,781 ("'781 patent") to defendant Eagle Manufacturing Co. ("Eagle") and granting summary judgment to Eagle on infringement of U.S. Patent No. 6,102,611 ("'611 patent"). Based on its determination that no damages were available, the court held that Sentry's claim for infringement of the '611 patent was moot and granted summary judgment of noninfringement of that patent. With respect to claims 10 and 23 of the '781 patent, Sentry's appeal challenges the district court's claim construction, application of prosecution history estoppel, and

summary judgment ruling of invalidity. Sentry also contends that the district court erred when it granted summary judgment of noninfringement of claim 10. Additionally, Sentry appeals the district court's summary judgment ruling on the '611 patent.

We affirm the district court's claim construction and summary judgment ruling that claims 10 and 23 of the '781 patent are invalid for anticipation. Because we conclude that claim 10 is invalid, we decline to reach issues of infringement of that claim, including prosecution history estoppel. We vacate the court's grant of summary judgment of noninfringement that was based upon the determination that no damages are available for infringement of the '611 patent and remand for further proceedings related to that patent.

We do not consider the possibility of relying on the alternative ground of invalidity to affirm the district court's judgment on the '611 patent. The district court did not invalidate any claims of the '611 patent, so a determination of invalidity on appeal would lessen Sentry's rights under the judgment. Eagle has not filed a cross-appeal that would permit such a result. Moreover, we do not normally decide significant issues for the first time on appeal. Sentry's motion to strike the '611 patent invalidity arguments is therefore granted. Sentry's request for us to take judicial notice of the patent examiner's comments in a related patent application is moot, because we do not rely on the reference discussed in those comments.

## I. BACKGROUND

The '781 patent and the '611 patent disclose barriers used for "protecting structural columns and supports from damage resulting from impact from a moving vehicle while preventing or reducing damage to that vehicle and its driver . . . such as in

a warehouse[.]" '781 patent, col. 1, ll. 10-14. The '781 patent issued from a continuation of the application that became the '611 patent.

Sentry asserted claims 1-5, 8, 10-13, and 23-25 of the '781 patent before the district court, but its appeal only relates to claims 10 and 23. Claims 10 and 23 require a plurality of "impact protection components," each of which is a "single unitary part." Claims 10 and 23 read as follows:

> 10. An apparatus for protecting an elongated structural support from impact, said apparatus comprising:
>
> a plurality of elongated impact protection components configured to fit together beside each other in installed positions in which said components define transversely adjacent segments of an elongated impact protection body that surrounds the structural support;
>
> each of said components being a single unitary part having a peripheral side wall with a rear portion configured to mate with the structural support upon movement of the component transversely into its installed position;
>
> each of said side walls surrounding a respective air chamber and further having a front portion configured to deflect inwardly toward said rear portion so as to reduce the volume of said respective air chamber upon the impact of a vehicle or the like, and thereby to protect the structural support from said impact.
>
> . . .
>
> 23. An apparatus for protecting a structural support from impact, said apparatus comprising:
>
> an impact protection component in the form of a single unitary part having a top, a base, and a peripheral side wall, said side wall having a rear portion configured to mate with the structural support so as to seat said component in an installed position adjoining the structural support;
>
> said side wall surrounding an air chamber and further having a front portion configured to deflect inwardly toward said rear portion so as to reduce the volume of said air chamber upon the impact of a vehicle or the like, and thereby to protect the structural support from said impact;
>
> said rear portion of said side wall having flat faces that are located opposite each other so as to mate with corresponding opposite flat faces of the structural support, and being flexible so as to conform to the shape

of the structural support at the opposite flat faces of the structural support so as to fit said component closely in said installed position adjoining the structural support;

said component being one of a plurality of elongated impact protection components which are unitary parts configured to fit together beside each other in installed positions in which said components define transversely adjacent segments of an elongated impact protection body that surrounds the structural support.[1]

'781 patent, col. 6, line 8 – col. 8 line 19.  The patentees added the "single unitary part" limitation during prosecution to overcome a rejection based on the Pease reference, U.S. Patent No. 3,831,941 ("Pease"), which discloses a column protection device made of an inner tube surrounded by a protective outer shell, useful (for example) as padding for the lower part of a set of football goalposts.  Based on the patentees' amendment, the court construed "single unitary part" to mean "that the impact protection component is a single part, which is complete by itself without additional pieces."  The court held that Eagle was entitled to summary judgment of noninfringement on all asserted claims of the '781 patent.[2]

Regarding invalidity, the court concluded that claims 10 and 23 were anticipated by the Chase reference, U.S. Patent No. 5,497,723 ("Chase").  Chase discloses a "boat bumper" that protects posts on a dock from impact by boats.  The court interpreted Chase as disclosing a cushion that consisted of a single unitary part, and that the other components disclosed in Chase (a post, a crosspiece, and mounting brackets) were not part of the impact protection component.

---

[1]     Although claim 23 employs slightly different terminology to describe the plurality of impact protection components, neither party contends that "unitary parts" in claim 23 should be interpreted differently from "single unitary part" in claim 10.

[2]     Sentry did not oppose Eagle's Motion for Entry of Judgment of Non-Infringement of Claims 23-25.

Sentry also accused Eagle of infringing claims 3-12 of the '611 patent. The district court held, on summary judgment, that Sentry could not obtain any damages for infringement of the '611 patent, so the issue of infringement was moot. The court determined that Sentry had not given legally sufficient notice of the '611 patent to Eagle, and so Eagle never received either actual or constructive notice of the '611 patent while it was allegedly infringing. In its opinion, the district court focused on Sentry's letters of August 4, 2000 and August 25, 2000. The August 4 letter notified Eagle that the '611 patent was about to issue. Sentry does not appeal the court's holding that the August 4 letter was insufficient to provide notice because the patent had not yet issued. The patent did issue on August 15, 2000, prompting Sentry's August 25 letter. On the same day Eagle received this letter, it modified its product so that it would not infringe. The district court held that Sentry's affidavit stating that it marked its products with the number of the '611 patent in the period from August 15 to August 25 did not create a genuine issue of material fact regarding notice.

## II. DISCUSSION

Sentry filed a timely appeal to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### A. Standard of review

Claim construction is reviewed de novo. Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Anticipation is a question of fact. Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999). However, a grant of summary judgment is reviewed de novo. Id. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as

a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., 145 F.3d 1303, 1307 (Fed. Cir. 1998).

**B. Arguments**

Sentry argues that the proper construction of the term "single unitary part" is "a single or sole unitary or whole part." According to Sentry, a part that is "unitary" can include multiple pieces joined together to provide or act as one whole piece. Sentry contends that its definition is consistent with the patentees' response to the Pease reference. In Sentry's view, the amendment distinguished the claimed invention from Pease's assembly as a whole, which includes multiple components: an outer shell and an inner tube. In contrast, Sentry maintains, the district court erroneously characterized the Pease device as inseparable and mistakenly understood the "single unitary part" amendment to refer to the "cushion" alone and not the entire assembly of Pease.

Sentry contends that the Chase prior art reference also discloses a multi-part impact protection component, and so it is outside the scope of claims 10 and 23 of the '781 patent. In addition to a cushion, Sentry points out, Chase has molding brackets and a crosspiece, so it is a multi-part impact protection component, not a single-unitary-part component as claimed in the '781 patent. Additionally, says Sentry, Chase only discloses a single component that wraps incompletely around the post, not a plurality of components that together completely surround the post, as required by claims 10 and 23. Sentry therefore concludes that Chase does not anticipate claims 10 and 23.

Sentry also argues that its marking of its patented products should have prompted the district court to deny Eagle's motion regarding the '611 patent. Sentry presented an affidavit alleging that it marked its products starting on August 15, 2000. Sentry contends that the district court erred by failing to recognize that this evidence of marking established the existence of a genuine issue of material fact.

In response, Eagle argues that the phrase "single unitary part" was added to claim 10 to avoid the prior art, which discloses an impact protection component that is a single unit made up of two parts. Therefore, Eagle says, the claim must be construed to mean "that the impact protection component is a single part, which is complete by itself without additional pieces." According to Eagle, Sentry's construction is illogical because it would permit a "single unitary part" to be made up of several parts.

Eagle claims that summary judgment of invalidity was appropriate because the components disclosed in the Chase reference are each a "single unitary part." Eagle does not contest Sentry's marking argument on the merits, but contends that Sentry waived that argument, either by not pleading constructive notice or by not coming forward with its marking evidence in opposition to Eagle's summary judgment motion or in support of its own summary judgment motion.

### C. Analysis

#### 1. Claim Construction

Courts look to the prosecution history as intrinsic evidence of the meaning of claim terms. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history modifies the scope of a claim term if "the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed

subject matter, or described a particular embodiment as important to the invention." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366-67 (Fed. Cir. 2002). The district court in this case determined that Sentry "expressly disclaimed the use of multiple components to overcome a rejection."

The district court's analysis of the prosecution history disclaimer is sound. Pease has an impact protection component made of multiple parts: a soft inner tube and a protective outer shell, as shown below in Figures 2 and 3. Both of these parts are involved in impact protection; together, they form the impact protection component. By amending their claims to include the limitation "single unitary part" and arguing that this amendment "distinguishes the present invention from the multi-component impact protection assembly disclosed by Pease[,]" the patentees gave up coverage of multipart impact protection components. For this reason, we affirm the district court's interpretation of this term as meaning "that the impact protection component is a single part, which is complete by itself without additional pieces."



This construction is correct even if, as Sentry asserts, the disclaimed Pease impact protection component can be separable. Pease discloses both separable and inseparable embodiments. For example, in the preferred embodiment, the shell and tube are "glued together." In another embodiment, they are connected by "snap fasteners" and thus are separable. By distinguishing their invention from Pease, the patentees disclaimed coverage of both separable and inseparable impact protection components, so long as the components include multiple parts. The district court's construction accounts for this disclaimer.

Sentry's quarrel seems to be with the way the court applied its construction. The court held that Eagle's device did not infringe because, "[l]ike Pease, it is comprised of multiple components that are 'secured together [and] not separable.'" As mentioned supra, we have elected to dispose of this appeal without considering infringement

issues. But, to the extent that this statement by the district court represents a corollary to the court's claim construction, the statement nonetheless reiterates the key point: that impact protection components consisting of "multiple" parts are not covered. Properly, the court's overriding concern was that "the term single unitary part must be construed to reflect the fact that the impact protection component is comprised of [only] one piece."

### 2. Invalidity

Applying this claim construction, the district court correctly granted summary judgment of invalidity. Chase discloses a plurality of impact protection components that surround a column, as well as all of the other limitations of claims 10 and 23 of the '781 patent. [3] The disclosure of Chase leaves no genuine issue of material fact that contradicts the district court's judgment of anticipation.

We agree with the district court's interpretation of Chase as disclosing a "pair" of impact protection components, not just one. The "connecting strip," shown below as reference numeral 64 in Figure 5, "act[s] as a hinge" that links the two impact protection components together. The "front portion 60 and back portion 62" are not a single component merely because this strip holds them together. They are two distinct, hollow cushions. Thus, Chase has a "plurality" of impact protection components.

---

[3] Chase was not before the examiner during the prosecution of the '781 patent.



Likewise, the district court correctly observed that the pair of impact protection components in Chase "surround a post." The small gap opposite the connecting strip in Figure 5 does not preclude the assembly from surrounding the post, because "surrounding" only implies that substantially all, not necessarily 100%, of the circumference of something is enclosed. The gap, moreover, is closed by a narrow "C-shaped closure member" when the assembly is in use (reference numeral 86 in Figure 4, above). Accordingly, Chase discloses an "elongated impact protection body that surrounds the structural support" as recited in claims 10 and 23 of the '781 patent.

Finally, the two impact protection components in Chase are each a "single unitary part," as that term is used in the '781 patent. Each of Chase's impact protection components consists of nothing more than a hollow cushion, made of a flexible material such as polyethylene or polyurethane. There is no combination of shell and tube (as in Pease) or of any other two or more pieces to form an impact protection component. Rather, each such component in Chase is complete without additional parts and is therefore a "single unitary part." The "frame" and "mounting brackets" in Chase are not

part of any impact protection component. These pieces do not provide impact protection; they merely hold the impact protection components in place.

That Chase discloses the remaining limitations of claims 10 and 23 is not disputed on appeal. Accordingly, we affirm the judgment that these two claims are invalid.

### 3. Availability of Damages for the '611 Patent

Before considering the '611 patent marking issue on the merits, we first dispose of Eagle's claim that Sentry waived its arguments. First, Eagle contends that Sentry waived its arguments by failing to present marking evidence in response to Eagle's summary judgment motion. (Eagle notes that Sentry did not present this evidence with its own summary judgment motion, either.) Eagle, however, cites no binding authority that would lead us to find waiver in this case, given that the district court considered the marking evidence when Sentry submitted it with its motion to alter or amend the judgment. Eagle's primary case, Hinsdale v. City of Liberal, Kansas, is an unpublished Tenth Circuit decision. 19 Fed. Appx. 749 (10th Cir. 2001). Its other authority, United States v. Haynie, is a Seventh Circuit criminal case that is inapposite for the additional reason that the waiving party did not raise his argument at all during trial, even in a post-judgment motion. 179 F.3d 1048, 1050-51 (7th Cir. 1999).

Second, Eagle argues that Sentry's failure to plead compliance with the marking statute also constituted a waiver. Eagle cites Maxwell v. Baker for the proposition that a patent plaintiff is required to plead constructive notice. See 86 F.3d 1098, 1111 (Fed. Cir. 1996). That case, however, only makes the bare statement that the plaintiff "had the burden of pleading and proving at trial that she complied with the statutory

requirements." Id. The Maxwell court ultimately found that the plaintiff not only pleaded but proved such compliance. More relevant to the present case is the Supreme Court's statement, in reference to both actual notice and marking, that "the duty of alleging and the burden of proving either of these facts is upon the plaintiff." Dunlap v. Schofield, 152 U.S. 244, 248 (1894). Under the rule announced in Dunlap, Sentry's pleading that the "infringements have been willful and with full knowledge of the '611, and '781 patents" was sufficient. See id. at 249 (requiring a pleading equivalent to "with a knowledge of the patent and of his infringement[]" and "holding the patentee to allege . . . notice to the public or to the defendant, from which such knowledge must necessarily be inferred" (internal quotation marks omitted)). Accordingly, Sentry did not waive its marking argument by failing to plead notice.

Turning to the merits of the issue, the district court misapplied the constructive notice rule with respect to the '611 patent. In cases where a patent owner sells a product embodying the invention, a patent owner may seek damages for infringement occurring during a period in which the accused infringer had actual or constructive notice of the asserted patent. See 35 U.S.C. § 287(a); Am. Med. Sys. v. Med. Eng'g Corp., 6 F.3d 1523, 1536 (Fed. Cir. 1993). It is undisputed in this appeal that Eagle did not infringe the '611 patent once it had actual notice of that patent. However, constructive notice is disputed. Constructive notice is provided "when the patentee consistently mark[s] substantially all of its patented products[.]" Am. Med., 6 F.3d at 1538. Sentry produced evidence of such marking during the period of Eagle's alleged infringement. Specifically, Sentry came forth with an affidavit stating that its products were marked, together with documents showing sales in that period. Our review of this

evidence indicates that it is not so "conclusory" or "lacking in factual support" as to allow us to affirm the grant of summary judgment.  See Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1112 (Fed. Cir. 2000).  Accordingly, the district court erred by holding that Sentry's marking evidence did not preclude summary judgment.  Sentry is entitled to an opportunity to prove constructive notice and corresponding entitlement to damages for infringement of the '611 patent.  Our holding, naturally, renders the issue of infringement of this patent not moot.

### III.  CONCLUSION

For the reasons stated above, we:  affirm the district court's claim construction and grant of summary judgment of invalidity of claims 10 and 23 of the '781 patent, vacate the court's grant of summary judgment of noninfringement of the '611 patent, and remand for further proceedings on that patent.

AFFIRM-IN-PART, VACATE-IN-PART AND REMAND-IN-PART