# United States Court of Appeals for the Federal Circuit

05-1507

SYNGENTA SEEDS, INC. and SYNGENTA PARTICIPATIONS AG,

Plaintiffs-Appellees,

v.

DELTA COTTON CO-OPERATIVE, INC.,

Defendant-Appellant.

Mark Murphey Henry, Henry Law Firm, of Fayetteville, Arkansas, argued for plaintiffs-appellees. With him on the brief was Nathan P. Chaney.

William H. Bode, Bode & Grenier, LLP, of Washington, DC, argued for defendant-appellant. Of counsel on the brief was Hunter J. Hanshaw, of Jonesboro, Arkansas.

Appealed from: United States District Court for the Eastern District of Arkansas

Judge Susan Webber Wright

# United States Court of Appeals for the Federal Circuit

05-1507

SYNGENTA SEEDS, INC., and SYNGENTA PARTICIPATIONS AG,

Plaintiffs-Appellees,

v.

DELTA COTTON CO-OPERATIVE, INC.,

Defendant-Appellant.

_____

DECIDED: July 28, 2006

_____

Before RADER, SCHALL, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

On April 28, 2005, following a jury trial, the United States District Court for the Eastern District of Arkansas entered a judgment against defendant-appellant Delta Cotton Co-Operative, Inc., awarding damages to plaintiffs-appellees Syngenta Seeds, Inc., and Syngenta Participations AG (collectively "Syngenta Seeds" or "Syngenta") for infringement of Syngenta's rights under the Plant Variety Protection Act and the Lanham Act. On July 5, 2005, the district court entered an order denying Delta Cotton's motions for judgment notwithstanding the verdict, new trial, and remittitur, and granting Syngenta's motions for permanent injunction and costs. Syngenta Seeds, Inc., v. Delta Cotton Co-Op., Inc., No. 3:02-CV-00309 (E.D. Ark. July 5, 2005) ("Order"). Delta Cotton timely filed a notice of appeal on July 29, 2005. The district court had jurisdiction

pursuant to 28 U.S.C. § 1338(a), and this court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1).  For the reasons set forth herein, we reverse.

BACKGROUND

Syngenta Seeds is an international agribusiness that produces, among other agricultural products, commercial crop seeds.  At the heart of this litigation is a Syngenta Seeds product known as "Coker 9663"—a soft red winter wheat variety sold by Syngenta through a network of independent distributors throughout the United States.  The Coker 9663 variety is certified pursuant to, and subject to the protections of, the Plant Variety Protection Act ("PVPA"), discussed in detail below.  As a certified PVPA seed, Coker 9663 is sold exclusively in approved packaging that sets forth the variety name and the required PVPA marking notice, which reads "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited."  Syngenta is also the holder of the federally registered trademark "COKER."

Delta Cotton operates a grain elevator in Greene County, Arkansas.  Like most grain elevator operators, Delta engages in at least three separate businesses.  First, it acts as a broker or middleman for local farmers' grain sales.  Farmers ship grain to the facility for testing, grading, and storage.  The elevator then finds buyers for the grain and takes a sales commission on the highest available price.

Second, the elevator also makes outright purchases of local farmers' harvested crops, including wheat.  Purchased crops are stored in bins that are sorted by commodity, such that wheat is stored separately from corn, corn from soybeans, and so on.  The facility receives and stores approximately 50,000 bushels of wheat per year.  Although the facility receives wheat from many sources, all wheat received is placed in

the same storage bin. As a sideline of its grain-storage business, Delta Cotton sells bags of stored wheat as "feed wheat," intended not to be propagated as crops but to be fed to farm animals. Feed wheat is sold in 50-pound bags that are generally labeled "Delta Co-Op feed."

Finally, Delta Cotton also operates as a retailer of protected variety seed, in which capacity it sells—among many other varieties—Syngenta's protected Coker 9663 seed.

At issue in this case is the sale by Delta Cotton of three 60-pound bags labeled "feed wheat" that allegedly contained protected Coker 9663 seed. In 2001, a man hired by Syngenta Seeds' law firm entered Delta Cotton's facility and asked whether Delta had "any wheat I can plant for deer plots." The store provided him with three bags for $3.50 each. The bags were labeled "Delta Cotton Co-Operative" and "Feed Wheat." Order at 3; J.A. at 2880. The bags were then provided to Dr. Brent Turnipseed, an agronomist, for identification testing. Dr. Turnipseed testified that analysis indicated that the specimen provided to him, and alleged to have been drawn from those bags, contained 90% protected Coker 9663 seed.

On September 16, 2002, Syngenta Seeds filed suit against Delta Cotton in the Eastern District of Arkansas for, inter alia, infringement of the PVPA and the Lanham Act, seeking permanent injunctive relief, treble damages, disgorgement of profits, and costs. A three-day trial was held before a jury from April 25-27, 2005, after which the jury rendered a verdict for Syngenta Seeds. The court entered judgment against Delta Cotton of damages of $67,500 on the PVPA claim, $67,500 on the Lanham Act claim, plus interest. On July 5, 2005, following briefing, the court also granted Syngenta

Seeds' motions for a permanent injunction and costs, and denied Delta Cotton's motions for new trial, judgment notwithstanding the verdict, and remittitur. Order at 8-9. Delta Cotton filed its notice of appeal of the court's order on July 29, 2005. We have exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

On appeal, Delta Cotton raises a host of challenges to the trial court's denial of its post-trial motions. First, it asserts that Syngenta "failed to present any credible evidence on the threshold element of infringement" under the PVPA and the Lanham Act: "that the wheat bagged and sold by Defendant was the Coker 9663 Protected Variety." Second, it asserts that because "uncontested evidence showed that the identified sales were made . . . for feed purposes and not for propagation," Syngenta Seeds could not have established the element of scienter, which Delta Cotton asserts is required for a finding of PVPA infringement. Third, it alleges that the trial court abused its discretion by excluding evidence of Delta Cotton's lack of knowledge of the source of the wheat, preventing Delta Cotton "from establishing a defense to damages under § 2567" of the PVPA. Fourth, it alleges that Syngenta failed to present evidence sufficient to state a cause of action under the Lanham Act. Finally, it claims that the damages awarded to Syngenta were duplicative and "grossly exceeded the damages permitted for infringement" under both the PVPA and the Lanham Act.

## STANDARD OF REVIEW

In reviewing a trial court's denial of a motion for judgment as a matter of law[1] in Lanham Act cases, this court applies the law of the relevant regional circuit—here, the Eighth.  See, e.g., Thompson v. Haynes, 305 F.3d 1369, 1374 (Fed. Cir. 2002).  In the patent context—to which the PVPA claims raised here are analogous—we have reviewed such denials using both regional circuit law and our own law.  Compare NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1324 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1174 (2006) (applying regional circuit law), with Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc) (applying Federal Circuit law).  This inconsistency is insignificant in this case, because the standards applied by this court and by the Eighth Circuit are essentially similar.  Both circuits review a district court's denial of a motion for judgment as a matter of law following a jury verdict de novo, drawing all reasonable inferences in favor of the non-moving party and assuming that the jury resolved all factual conflicts in that party's favor.  See, e.g., Honeywell Int'l, Inc., 370 F.3d at 1139 (stating that this court reviews denial of a motion for judgment as a matter of law without deference, viewing all evidence and drawing all inferences favorably to the non-moving party); Walsh v. Nat'l Comp. Sys., Inc., 332 F.3d 1150, 1158 (8th Cir. 2003) (same).  We must not set aside a jury verdict unless there is a "complete absence of probative facts to support the verdict."  Walsh, 332 F.3d at 1158.  Federal Rule of Civil Procedure 50(a)(1) provides that a court may grant a motion

---

[1]    Delta Cotton's motions for directed verdict and judgment notwithstanding the verdict are treated as motions for judgment as a matter of law under the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 50, Notes to subdivision (a), 1991 amendments; see also Larson v. Miller, 76 F.3d 1446, 1452 n.3 (8th Cir. 1996).

05-1507                                                      5

for judgment as a matter of law only where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-movant]." Fed. R. Civ. P. 50(a)(1).

## DISCUSSION

### I. Waiver and Scope of Appellate Review

At the close of Syngenta's case, Delta Cotton moved for a directed verdict on the grounds that Syngenta had failed to carry its burden of proof on both PVPA infringement and Lanham Act infringement. The trial court denied that motion from the bench. Following entry of the jury's verdict, Delta Cotton filed motions for new trial, judgment notwithstanding the verdict, and order of remittitur, all of which the district court denied in its order of July 5, 2005.

Under Eighth Circuit law, a post-verdict motion for judgment as a matter of law may not raise issues not previously raised in a pre-verdict motion. Walsh, 332 F.3d at 1158. Here, Delta Cotton's pre-verdict motion raised only sufficiency of the evidence as grounds, asserting that Syngenta had failed to prove PVPA infringement and had failed to prove confusion or injury under the Lanham Act. The trial court therefore limited its consideration of Delta Cotton's motions to those issues, and—except with respect to Delta Cotton's argument under § 2567 of the PVPA, discussed below—we are constrained to do the same. The sole issues before us on appeal, therefore, are (1) whether the jury's verdicts of infringement under the PVPA and confusion or injury under the Lanham Act were supported by evidence sufficient to sustain the verdicts, and (2) whether the district court correctly applied § 2567 of the PVPA.

## II. PVPA Claims

### A. Infringement

The PVPA provides patent protection to breeders of certain plant varieties, who may acquire "the right . . . to exclude others from selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or using it in producing . . . a hybrid or different variety therefrom" for a period of twenty years. 7 U.S.C. § 2483(a)(1), (b). The PVPA provides a cause of action for infringement against any person who, inter alia, undertakes to "sell or market the protected variety," multiply or propagate it "for growing purposes," or "dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received." 7 U.S.C. § 2541(a).

According to the trial court's order, the jury issued a verdict of infringement under 7 U.S.C. § 2541(a)(6), which provides that "it shall be an infringement" of the PVPA to "dispense the [protected] variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received." The trial court appears to have read § 2541(a)(6) as a strict-liability provision, such that any dispensation of protected seed without notice to the recipient that it is protected constitutes infringement. See Order at 3 ("Concerning the PVPA, the jury found that Delta Cotton sold Syngenta's protected wheat . . . to another, in a form which could be propagated, without notice as to it being a protected variety, in violation of 7 U.S.C. § 2541(A)(6)."); see also Transcript at 222 (judge instructing counsel that "I'm going to tell the jury that it's unimportant what the co-op knew . . . . What's important is whether what was sacked up was Coker 9663, unmarked, in propagatable form."); Transcript at

179 (judge stating that "what Delta Cotton knew and what farmers told them is not relevant" to infringement); Transcript at 357 (judge informing counsel that "plaintiff need not show that Delta Cotton had knowledge that [the seed] was Coker . . . . It doesn't matter under 2541 what Delta Cotton knew. What matters is whether this was Coker's seeds.").

The trial court erred in its construction and application of the statute. By its terms, (a)(6) has four components: (1) dispensation of a protected variety, (2) in a propagatable form, (3) without the notice that it is a protected variety, and (4) under which it was received by the dispenser. The trial court appears to have construed (a)(6) to include only the first three elements. This court, however, has construed the fourth component of (a)(6) to permit a finding of infringement only if the dispenser—here, Delta—had notice that the seed it dispensed was a protected variety, either because it received the seed in marked form or because it had independent knowledge of the seed's protected status. Delta & Pine Land Co. v. Sinkers Corp., 177 F.3d 1343, 1355 (Fed. Cir. 1999). Because § 2541(a)(6) imposes liability only if a protected variety is dispensed "without notice," by definition, the dispenser of the seed must have had notice that it received a protected variety. In addition, before liability attaches, this language also requires that the dispenser have failed to provide notice to the recipient of the dispensed seed that the seed was a protected variety.

The trial court's construction of the provision erroneously omits a necessary element of an infringement claim under § 2541(a)(6): that the accused infringer had notice that the seed it was dispensing was PVPA protected. Because the trial court did not require Syngenta Seeds to prove that Delta both had notice and failed to provide

this notice to the recipient of the dispensed seeds, the evidence before the jury was insufficient as a matter of law to sustain a finding of infringement.

## B. Damages

Section 2567 of the PVPA provides that an owner of a protected variety cannot recover damages for infringement if "the variety is distributed by authorization of the owner and is received by the infringer without" a label containing the words "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Limited," unless the infringer has "actual notice or knowledge that propagation is prohibited or that the variety is a protected variety." 7 U.S.C. § 2567.

Delta Cotton argues that because it received the Coker 9663 seeds without notice of their protected status, it is protected against a damage award for infringement by § 2567. The trial court erred, according to Delta Cotton, by systematically excluding all evidence of Delta Cotton's knowledge or lack of knowledge from trial. Syngenta Seeds, in turn, argues that we lack jurisdiction over this portion of Delta Cotton's argument, because Delta Cotton failed to raise its § 2567 argument until its post-verdict motion for judgment as a matter of law, and thus waived it.

Section 2567 is the PVPA analogue to § 287 of the Patent Act, which provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent. . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

35 U.S.C. § 287(a). This court has held that, in order to recover damages for patent infringement, a patentee bears the burden of pleading and proving either actual or constructive notice that the article is patented. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996). Although it appears that the federal courts have never addressed this issue with respect to the PVPA's § 2567, its similarity to the Patent Act's damage limitation provision leads us to conclude that a party seeking to recover damages for PVPA infringement must allege and prove the marking or actual notice requirements of § 2567. Where the alleged infringer received the protected seed without the statutory label, the plaintiff has the burden to prove and demonstrate "actual notice or knowledge that propagation is prohibited" or that the seed is a protected variety.[2]

We therefore conclude that Delta Cotton did not waive its arguments based upon the knowledge requirements of § 2567, because Delta Cotton did not bear the burden of establishing the element of knowledge at trial. The statute provides, rather, that in order to recover damages under § 2541(a)(6) the plaintiff—here, Syngenta Seeds—must demonstrate both that the defendant infringed and that its infringement occurred with

---

[2] We note, in this connection, that the limitation on damages provided in PVPA is potentially broader than the similar limitation in the Patent Act. In the patent context, where a patent is sold as a commercial product, an alleged infringer is deemed to have "constructive notice" of the patent protection "when the patentee consistently mark[s] substantially all of its patented products" with the statutory label. Sentry Prot. Prods., Inc. v. Eagle Mfg. Co., 400 F.3d 910, 918 (Fed. Cir. 2005) (internal quotation omitted). It stands to reason that if Acme Co. marks 99% of its widgets with their patent number, a downstream infringer should know that the widgets are patent protected. A seed producer, by contrast, cannot label his individual seeds, but only the container in which they are shipped. It is comparatively simple for an unscrupulous user to remove the seeds from their original container and reintroduce them into the stream of commerce, effectively immunizing all subsequent purchasers from PVPA infringement damages.

actual notice or knowledge that the seed was protected by the PVPA. The question of Delta Cotton's notice or knowledge, therefore, was not a matter to be pled by Delta Cotton as an affirmative defense, but a necessary burden required to be proved by Syngenta in order to establish its damages. Delta's argument relating to § 2567 is an argument based upon the insufficiency of the evidence presented at trial. Delta properly preserved such arguments, and this court therefore has jurisdiction over Delta's § 2567 claim. Exercising that jurisdiction, we conclude that the trial court's failure to require Syngenta to plead and prove its damages claim was erroneous as a matter of law.

### III. Lanham Act Claims

The Lanham Act provides the framework for trademark protection. Section 1125 of the act prohibits the use in commerce of "any false designation of origin" that "is likely to cause confusion . . . as to the origin, sponsorship, or approval of . . . goods." 15 U.S.C. § 1125(a)(1)(A). Courts with Lanham Act jurisdiction are empowered "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any" trademark right "or to prevent a violation under" § 1125(a). 15 U.S.C. § 1116(a). A trademark holder alleging a violation under § 1125(a) may also seek damages, profit disgorgement, and costs. 15 U.S.C. § 1117(a). In "extenuating circumstances," treble damages may be available. 15 U.S.C. § 1117(b).

The jury found that Delta Cotton violated 15 U.S.C. § 1125(a) "based upon a 'reverse palming off'" theory. Order at 4. In denying Delta Cotton's post-verdict motions, the trial court stated that "there was ample evidence presented that Coker 9663 wheat and the Coker trademark originated with Syngenta, that the origin of the

Coker 9663 was falsely designated by Delta Cotton, that the false designation was likely to cause consumer confusion, and that Syngenta was harmed by Delta Cotton's false designation of origin." Id.

The Supreme Court has defined "reverse passing off"—also known as "reverse palming off"—as occurring when a person "misrepresents someone else's goods or services as his own" and has held that it is actionable under § 1125(a). Dastar v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1, 30 (2003).[3] In order to recover on a Lanham Act claim for "reverse palming off," a plaintiff must prove:

(1)    that the work at issue originated with the plaintiff;
(2)    that origin of the work was falsely designated by the defendant;
(3)    that the false designation of origin was likely to cause consumer confusion; and
(4)    that the plaintiff was harmed by the defendant's false designation of origin.

Lipton v. Nature Co., 71 F.3d 464, 473 (2d Cir. 1995). The trial court's Lanham Act instruction to the jury mirrored these elements of proof.

On appeal, Delta Cotton argues that the evidence was insufficient to sustain a Lanham Act claim, alleging that Syngenta Seeds failed to adduce evidence of any of these four elements at trial. It argues, first, that Syngenta failed to satisfy the first element because it offered no evidence that Delta Cotton knew "that the seeds it had received from local farmers and was selling as animal feed included Coker 9663," and that there was thus "no attempt by Delta to do a 'reverse palm off' of these expensive

---

[3]    Reverse palming off exists in contradistinction to the palming off theory recognized by the Supreme Court in Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234 (1964), and Sears, Roebuck Co. v. Stiffel Co., 376 U.S. 225 (1964), in which a seller attempts to pass off his own goods as another's.

planting seeds as much cheaper animal feed." Second, Delta argues that there was no evidence of "false designation" of the seed, because the feed bags in question lacked "any designation (false or otherwise) regarding the origin of the seeds," and because there was no evidence that "the bags of feed sold to Mr. Robnett were intended for planting." Third, Delta argues that the sales at issue could not have caused consumer confusion, in part because there was no "evidence that Delta made any attempt to represent itself as the producer of the grain," and "no testimony that any consumer was . . . likely to be confused . . . because Delta sales were for feed[,] not for seed." Finally, Delta asserts that Syngenta could not have been harmed by the allegedly false designation.

With regard to Delta Cotton's first two arguments, we note merely that there is no scienter requirement for Lanham Act infringement, and that the placement of words like "Delta Co-op Feed" on bags containing Coker 9663 wheat is sufficient to constitute false designation. With regard to the "harm" point, Syngenta Seeds points to testimony offered at trial indicating that "any sales of [Syngenta's] wheat genetics in a competitor's bag are harmful to Syngenta's reputation and overall business plan." It also argues that "Delta's actions denied Syngenta 'the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product.'" Appellee's Br. at 36 (quoting Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1242 (8th Cir. 1994)).

Several courts of appeals have concluded that "the gravamen of the injury" in a reverse passing off case is that the "'originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that

05-1507                                        13

otherwise would stem from public knowledge of the true source of the satisfactory product.'"[4] Waldmon Pub. Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994) (quoting Smith v. Montoro, 648 F.2d 602, 607 (9th Cir. 1981)); see also Roho, Inc. v. Marquis, 902 F.2d 356, 359 (5th Cir. 1990); Pioneer Hi-Bred, 35 F.3d at 1242. Here, the jury was instructed that in assessing Lanham Act liability and damages, it should consider four factors: reputational injury, injury to goodwill, "[t]he expense of preventing customers from being deceived," and the "costs of future corrective advertising reasonably required to correct any public confusion caused by the infringement." The trial court, in upholding the Lanham Act verdict, merely stated that the jury could have concluded that "Syngenta was harmed by the false designation of origin by being deprived of the advertising value of its name and the benefits that are associated with public knowledge of the true source of the product." Order at 5.

We conclude that there was insufficient evidence to support the kind of reputational injury referred to in the cited precedents and in the jury instruction and order. A person who purchased Coker 9663 that was marked as "Delta Co-Op Feed" could never know that it had purchased the trademarked product, and could thus have drawn no conclusions about the merits or quality of that product. The parties have not directed this court to any record evidence of lost advertising value, the value of lost goodwill, or any similar injury. Given that these were the only kinds of harm on which the jury received instructions, we cannot conclude that the jury's verdict was supported by sufficient evidence.

---

[4] This court has never directly addressed a Lanham Act claim involving reverse palming off. See Witco Chem. Co. v. United States, 742 F.2d 615, 625 (Fed. Cir. 1984) (briefly discussing "the tort of 'reverse passing off'" as it related to a contract action).

The only conceivable injury Syngenta could incur from Delta's conduct would involve the propagation of the misbranded Coker seed, creating a source of unregulated Coker wheat that would compete with properly branded Coker wheat. That injury, in turn, depends on whether or not the wheat was sold for propagation. The trial court excluded Delta Cotton's evidence that the wheat was sold for feed, and not for propagation. The court stated, for example, that it would not "allow evidence concerning whether Delta Cotton produces this for feed," apparently on the ground that such evidence was irrelevant. The trial court also appears to have instructed the jury expressly that evidence that Delta sold wheat "for animal feed" was not relevant to the case, although the complete transcript of that instruction is partially missing from the submitted record. See Transcript at 180. Evidence of the purpose for which the resold seed was intended, however, could be highly relevant to Syngenta's Lanham Act claim, for two reasons. First, much of the harm alleged by Syngenta Seeds is based upon the assumption that the resold seed will be propagated, thus depriving it of market share. If the seed was sold as animal feed, the alleged harm is significantly less likely to occur. Second, we question whether a Lanham Act claim for reverse passing off is even cognizable when the re-branded product is used for a different purpose than, and thus does not compete with, the trademarked product.

In any event, Syngenta Seeds produced no evidence of any such injury at trial. Because Syngenta Seeds did not produce evidence sufficient to sustain a jury finding of injury under the Lanham Act, we conclude that Delta Cotton's motion for judgment as a matter of law on the Lanham Act claim should have been granted.

CONCLUSION

For the reasons set forth in this opinion, we reverse the district court's denial of Delta Cotton's motion for judgment as a matter of law on both the PVPA and Lanham Act claims.

REVERSED

No costs.